GST TUCSON LIGHTWAVE,
INC., Plaintiff,

v.

CITY OF TUCSON,
Defendant/Counterclaimant,

and

US West Communications, Inc.,
Defendant–Intervenor.

No. CV 96–326 TUC JMR.

United States District Court,
D. Arizona.

Dec. 19, 1996.

J. Jeffrey Mayhook, GST Tucson Lightwave, Inc., Vancouver, WA, Edward M. Mansfield, Belin Harris Lamson McCormick, Des Moines, IA, Nancy M. Coomer, Tucson, AZ, for Plaintiff.

Richard M. Rollman, Gabroy, Rollman & Bosse, P.C., Tucson, AZ, for Defendant/Counterclaimant.

Gary L. Lane, U.S. West Law Department, Phoenix, AZ, Timothy Berg, Theresa Dwyer, Fennemore Craig, P.C., Phoenix, AZ, Andrew M. Federhar, Fennemore Craig, P.C., Tucson, AZ, for Defendant/Intervenor U.S. West Communications, Inc.

## ORDER

ROLL, District Judge.

Under advisement following a hearing on December 4, 1996 are cross-motions for judgment on the pleadings filed by Plaintiff GST Tucson Lightwave, Inc. ("GST") and Defendant/Counterclaimant City of Tucson ("City"), joined in part by Defendant–Inter-

venor US West Communications, Inc. ("US West"), and related matters.

Plaintiff GST filed this action in May 1996 requesting declaratory and injunctive relief alleging that the City has violated § 253(c) of the Telecommunications Act of 1996 ("Act") by managing its rights-of-way in a competitively biased and discriminatory manner as between GST and US West. 47 U.S.C. § 253(c).[1]

For the reasons set forth below, the City's cross-motion for judgment on the pleadings is granted.

## CROSS–MOTIONS FOR JUDGMENT ON THE PLEADINGS

GST brings this action for declaratory and injunctive relief pursuant to 47 U.S.C. § 253(c), part of the Telecommunications Act of 1996. Section 253 provides, in part:

**Sec. 253   Removal of barriers to entry**

**(a) In general**

No state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

.       .       .       .       .

**(c) State and local government authority**

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

.       .       .       .       .

47 U.S.C. § 253(a) & (c). GST contends that pursuant to 47 U.S.C. § 253(c), the City may only charge competitively neutral and non-discriminatory license/franchise fees.

Chapter 7B of the Tucson City Code provides that any licensee/franchisee must pay the City an amount equal to 5.5% of gross annual revenues from customers served within the City's corporate limits. The City has applied this provision to two other telecommunications providers, and conditions approval of GST's franchise on acceptance of the provision. However, as the City and US West admit, US West pays no license/franchise fee to the City and has not been subjected to Chapter 7B. Thus, GST asserts, the City is discriminating against GST in favor of US West in violation of § 253(c), and, accordingly, GST's motion for judgment on the pleadings should be granted. The City contends that its cross-motions should be granted because 47 U.S.C. § 253(c) creates no private cause of action, and, accordingly, GST cannot avail itself of it.

### Standard for Motion for Judgment on the Pleadings

Pursuant to Rule 12(c), Federal Rules of Civil Procedure, after the pleadings are closed, but within such time as to not delay trial, any party may move for judgment on the pleadings. However, "[a] motion for judgment on the pleadings is a motion for judgment on the merits, and should only be granted if no material issue of fact remains to be resolved, and the movant establishes [entitlement] to judgment as a matter of law." 27 Fed.Proc., L.Ed. 538, § 62:429. Rule 12(c) further provides that if matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56, Federal Rules of Civil Procedure. Here, in deciding the cross-motions for judgment on the pleadings, the Court has not considered any factual matters presented by the parties outside the pleadings.

### Analysis

No express authority for a private right of action appears in the § 253(c). However, whether a private right of action should be implied also must be considered.

---

1. Although the City and US West have also filed claims against each other, at argument, the City and US West acknowledged that their claims against each other are moot should the Court grant the City's motion for judgment on the pleadings.

The United States Supreme Court's four part test for determining whether a private right of action is implicit in a statute includes: (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether any explicit or implicit indication of legislative intent exists to create or deny a remedy; (3) whether implication of a remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, making the inference of a cause of action solely under federal law inappropriate. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975).

The City contends that Congress did not intend § 253(c) to be an enforcement provision for telecommunications providers. Instead, Congress intended the provision to be a defense for municipalities against claims that such municipalities have erected barriers to entry. The City refers to the section as a "safe harbor" provision for municipalities. Thus, the requirement that regulation of public rights-of-way must be done on a competitively neutral and nondiscriminatory basis is a condition of the defense, not an element of a violation.

The City supports this argument with reference to the "Nothing in this section affects ..." language at the start of subsection (c), as well as with citations to the legislative history of the Stupak–Barton amendment. The comments made during debate of § 253(c) and the final language approved indicate congressional intent to allow states and municipalities to retain control over local rights-of-way.[2] Moreover, that amendment constituted rejection of the previously offered "parity" provision.[3] The City also asserts that the FCC's decision in *In re Classic Tel. Inc.,* CCBPol 96–10, No. 96–387, opinion and order (FCC, *adopted,* September 30, 1996, *released,* October 1, 1996) supports its position. Although *Classic Tel.* does provide some support for the argument that § 253(c) was intended to benefit state and local governments as a defense mechanism, the FCC did not reach the issue presented before this Court.

Enforcement of § 253 is provided for in § 253(d) and § 257, further indicating an absence of congressional intent that a private right of action be implied.

Section 253(d) provides in relevant part:

**(d) Preemption**

If ... the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall

---

2. For example, Representative Stupak stated during debate of the amendment, that the amendment was being offered "to protect the authority of local governments to control public rights of way and to be fairly compensated for the use of public property." 141 Cong.Rec. H 8460 (August 4, 1995). Further, Representative Stupak stated that without adoption of the Stupak–Barton amendment,

local governments would have to charge the same fee to every company, regardless of how much or how little they use the right-of-way or rip up our streets.... [I]f the Stupak–Barton amendment is not adopted, you will have companies in many areas securing free access to public property. Taxpayers paid for this property, taxpayers paid to maintain this property, and it simply is not fair to ask the taxpayers to continue to subsidize telecommunications carriers. In our free market society, the companies should have to pay a fair and reasonable rate to use public property.

*Id.* Representative Barton also stated that the Stupak–Barton amendment "guarantees that cities and local governments have the right to not only control access within their city limits, but

also to set the compensation level for the use of that right-of-way." *Id.*

3. The "parity" provision, sponsored by Representative Dan Schaefer, would have provided:

(e) **Parity of Franchise and Other Charges**— Notwithstanding section 2(b), no local government may impose or collect any franchise, license, permit or right-of-way fee or any assessment, rental, or any other charge or equivalent thereof as a condition for operating in the locality or for obtaining access to, occupy, or crossing public rights-of-way from any provider of telecommunications services that distinguishes between or among providers of telecommunications services, including the local exchange carrier. For purposes of this subsection, a franchise, license, permit, or right-of-way fee, or an assessment, rental, or any other charge or equivalent thereof does not include any imposition of general applicability which does not distinguish between or among providers of telecommunications services, or any tax. HR 1555, § 243(e). Inclusion of this provision was rejected by the House of Representatives.

preempt the enforcement of such statute, regulation or legal requirement to the extent necessary to correct such violation or inconsistency.

Thus, subsection (d) allows the FCC to preempt enforcement of state and local regulations which violate subsections (a) or (b), but makes no mention of subsection (c). The City argues that the exclusion of subsection (c) was deliberate in order to provide judicial relief to municipalities when the FCC goes too far in preemption activities pursuant to subsection (a). Congress created subsection (c), as stated by Representative Stupak, "to protect the authority of local governments to control public rights-of-way and to be fairly compensated for the use of public property." 141 Cong.Rec. H 8460 (August 5, 1995).

Section 257 also provides an enforcement mechanism whereby the FCC is required to identify and eliminate market entry barriers through promulgation of regulations. Additionally, every three years the FCC is required to perform a review of any regulations designed to eliminate barriers, as well as any statutory barriers the FCC would recommend be eliminated.

Moreover, the language of § 253(c) itself, i.e. "Nothing in this section affects ...", as well as its relationship to subsection (a), lends weight to the City's argument that § 253(c) was not intended to create a private right of action. Further, although subsection (c) is not included within the preemption provision of subsection (d), this exclusion does not necessarily indicate congressional intent to provide for private enforcement of subsection (c) by telecommunications providers. Rather, the exclusion simply prevents FCC preemption for a violation. Although discriminatory and non-competitively neutral treatment would violate the statute, it would not result in a private right of action for telecommunications providers. GST's suggested statutory construction would be inconsistent with the underlying purposes of § 253.

4. In light of this result, the Court need not reach the merits of this dispute. The Court notes, however, that in its opposition to the motion for judgment on the pleadings and motion for summary judgment, US West proffers justifications for the City not requiring US West to pay the 5.5% franchise fee required of other telecommunications providers.

■ The Court finds no private right of action exists pursuant to § 253(c). Accordingly, the City's cross-motion for judgment on the pleadings is granted, and GST's motion for judgment on the pleadings is denied.[4]

## MOTION FOR SUMMARY JUDGMENT

In light of the Court's ruling on the cross-motions for judgment on the pleadings, it is unnecessary to reach the other issues raised in US West's motion for summary judgment. Accordingly, the motion for summary judgment is denied as moot. Further, US West's motion to strike GST's supplemental response to the motion for summary judgment is denied as moot.

## MOTION RE: AMICUS CURIAE

The Court is also in receipt of Citizens Utilities Company's motion of amicus curiae for leave to file brief in response to US West's motion for summary judgment. That motion is denied as moot.

## CONCLUSION

Therefore, based on all of the above,

**IT IS HEREBY ORDERED** that the City of Tucson's Cross–Motion for Judgment on the Pleadings is **GRANTED.**

**IT IS FURTHER ORDERED** that GST's Motion for Judgment on the Pleadings is **DENIED.**

**IT IS FURTHER ORDERED** that US West's Motion for Summary Judgment is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** that US West's Motion to Strike GST's Supplement in Opposition to US West's Motion for Summary Judgment is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** that Citizens Utilities Company's Motion of Amicus Curiae for Leave to File Brief is **DENIED as MOOT.**

**IT IS FURTHER ORDERED** that the cross-claims of the City and US West against each other are **DISMISSED as MOOT.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED,** with **JUDGMENT** to be entered accordingly.